```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -- - X

J & J SPORTS PRODUCTION, INC.,

                  Plaintiff,          REPORT AND
                                      RECOMMENDATION

              - against -             CV 13-02738 (SJ)(MDG)

AAA BLUE IGUANA BAR LOUNGE, INC.
d/b/a BLUE IGUANA LOUNGE,
and ARVIND P. MANGAL

                  Defendants.
- - - - - - - - - - - - - - - - - - -X
```

GO, United States Magistrate Judge:

Plaintiff brings this action under Title 47 of the United States Code alleging that defendants AAA Blue Iguana Bar Lounge, Inc. d/b/a Blue Iguana Lounge and Arvind P. Mangal violated sections 605 and 553 by intercepting and displaying to their customers, without plaintiff's authorization, a pay-per-view televison broadcast.  After defendants failed to file an answer or any other responsive pleading, plaintiff filed a motion for default judgment, which the Honorable Sterling Johnson, Jr. has referred to me for report and recommendation.

                       PERTINENT FACTS

The facts pertinent to the determination of this motion are undisputed and are set forth in the Complaint, ct. doc. 1 ("Compl."); the November 1, 2013 affidavit of Joseph M. Gagliardi, President of plaintiffct. doc. 11, Ex. 2  ("Gagliardi

Aff."); and the May 11, 2011 affidavit of investigator Earl L. Covington, ct. doc. 11, Ex. 1 ("Covington Aff.").

Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal office and place of business located in San Jose, California. Compl. at ¶ 4. Defendant AAA Blue Iguana Bar Lounge, Inc. is a corporation authorized to transact business as "Blue Iguana Lounge" from its principal place of business located at 3219 Fulton Street, Brooklyn, New York. Id. at ¶ 5. Defendant Arvind P. Mangal is an officer, director, shareholder and/or principal of Blue Iguana Lounge. Id.

Plaintiff owns the rights to distribute via closed-circuit television and encrypted satellite signal the May 7, 2011 boxing match between Manny Pacquiao and Shane Mosley. Id. at ¶ 7. Plaintiff entered into license agreements with various entities to broadcast the boxing match to their patrons. Id. at ¶ 10.

The defendants were not authorized to receive or broadcast the boxing match. Id. at ¶ 12. However, on May 7, 2011, defendant intercepted the Pacquiao/Mosley telecast and broadcast it to patrons within Blue Iguana Lounge. Id. at ¶ 14; Covington Aff. at 1. As set forth in his affidavit, investigator Earl L. Covington entered the establishment at approximately 11:17 p.m. on May 7, 2011 and observed the unauthorized public showing of the boxing match at Blue Iguana Lounge to approximately 25 customers. Covington Aff. at 1-2.

DISCUSSION

I. Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relates to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Au Bon Pain, 653 F.2d at 65; Directv, Inc. v.

Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003).

II. Determination of Damages

    A. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming. Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication . . . or assist in receiving . . . and use such communication . . . for his own benefit or the benefit of another not entitled thereto." When television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir. 1996) (noting that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions); see also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).

Plaintiff establishes in its submissions that it had the right to distribute the program and that the program was displayed in violation of sections 553 and 605 of Title 47. Compl. at ¶¶ 7, 14; Covington Aff. at 1-2. Investigator

Covington observed the boxing match between Pacquiao and Mosley being displayed at Blue Iguana Lounge, a business alleged to be operated by defendant, even though defendant had not contracted with plaintiff to do so. Compl. at ¶¶ 7, 14; Covington Aff. at 1. Consequently, this Court finds that there was unlicensed reception and exhibition of the transmissions at Blue Iguana Lounge in violation of sections 553 and 605 of Title 47.

However, the liability of defendant Arvind P. Mangal, individually involves different and additional considerations from the liability of the corporate defendant. A party may be vicariously liable for infringement if he has "the right and ability to supervise" the infringing activities and had "an obvious and direct financial interest in the exploitation of [the] copyrighted materials" or contributorily liable if he "authorized" the infringing conduct. See Softel, Inc. v. Dragon Med. & Sci. Comm., Inc., 118 F.3d 955, 971 (2d Cir. 1997); Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971); Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963).

Plaintiff alleges in the complaint that defendant Arvind P. Mangal was an officer, director, shareholder and/or principle of AAA Blue Iguana Lounge and had supervisory capacity and control over the infringing activities occurring within the bar on May 7, 2011. Compl. at ¶ 5. Plaintiff also alleges defendant Arvind P. Mangal received a financial benefit from its operations. Id. These allegations, even though alleged upon information and

belief, are deemed admitted.  See Fong v. United States, 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge); 71 C.J.S. Pleading § 82; see also Garden City Boxing Club, Inc. v. Extasis Corp., No. 07-CV-3853, 2008 WL 3049905, at *8 n.9 (E.D.N.Y. Aug. 1, 2008)(accepting plaintiff's allegations as true due to plaintiff's difficulty in producing evidence in default cases where defendants refuse to cooperate in the discovery process); Premium Sports, Inc. v. Alzate, No. 10-CV-1982, 2011 WL 1240558 at *4 (E.D.N.Y. Feb. 25, 2011)("once a defendant is found to be in default, it is deemed to have admitted all of the well-pleaded allegations in the complaint as to liability").  In addition, defendant Mangal is named as the principal of AAA Blue Iguana Bar Lounge, Inc. in the records of the New York State Liquor Authority, Division of Alcoholic Beverage Control (see http://www.trans.abc.state.ny.us/JSP/query/PublicQueryInstructPage.jsp).  Accordingly, I infer from such allegations that defendant Arvind P. Mangal had supervisory control over its activities and received a financial benefit from its operations on May 7, 2011.  Thus, I recommend that defendant Arvind P. Mangal be held vicariously liable for violating Title 47.

B. Damages

   1. Statutory Damages

Plaintiff requests damages pursuant to sections 553 and 605. Compl. at ¶ 63. Where defendant is liable under both sections 553 and 605, the plaintiff is entitled to the greater damages available under section 605. Sykes, 75 F.3d at 127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01-CV-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible). Therefore, this report and recommendation addresses damages under section 605.

Section 605 allows plaintiff to elect to recover either actual damages and lost profits or statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i). Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a). Furthermore, section 605(e)(3)(C)(i)(II) vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just." See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff"). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct

-7-

or indirect commercial advantage or private financial gain." The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. See Cablevision Sys. N.Y. City Corp. v. Faschitti, No. 94-CV-6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes, 75 F.3d at 132 (quoting legislative history). Courts should therefore grant damages in an amount which achieves the deterrent purposes of the statute. See Cablevision Sys. N.Y. City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Although seeking statutory damages for defendants' willful violation of section 605, plaintiff also attempts to prove actual damages for lost profits which it claims amount to $5,573.75, and enhanced damages in the amount of $11,147.50, plus interest. See ct. doc. 11 (Pl.'s Mem.) at 9, 17. Specifically, plaintiff requests $2,200 for the licensing fee the plaintiff would have charged the establishment, $1,373.25 for residential fees that would have been charged based on a per patron basis and $2,000 for loss of goodwill. See Pl.'s Mem. at 10-13. In calculating actual damages and lost profits, plaintiff seeks recovery based on the number of patrons multiplied by the residential charge for the pay-per-view event. This is a method typically used to calculate statutory damages, as discussed below, and, critically, overlaps with damages for lost license fees, since plaintiff

would not be able to recover from individuals viewing the match at an establishment paying a licence to plaintiff. See Traffic Sports USA v. Modelos Restaurante, Inc., No. 11-CV-1454, 2012 WL 3637585, at *4 (E.D.N.Y. Aug. 1, 2012) (plaintiff incorrectly used a method to determine actual damages that courts have used to determine statutory damages). Further, in claiming damages of $2,000 for loss of goodwill, plaintiff provides only general information about the theft of cable services and the conclusory statement that it would be forced to curtail distribution of its programming if the theft continued unabated. Pl.'s Mem. at 13. However, plaintiff provides no information on actual damages that it suffered to its goodwill or reputation. Since the degree of harm caused by defendants' conduct on the commercial pay-per-view market can be a factor in determining enhanced damages and enhanced damages serve to deter such future violations, I recommend that loss of goodwill not be awarded as a part of actual damages. See Innovation Sports Mktg. v. Aquarius Fuente De Soda, Inc., No. 07-CV-2561, 2009 WL 3173968, at *8 (E.D.N.Y. Sept. 30, 2009). On this record, I find that the plaintiff has shown actual damages of only $2,200 and next consider plaintiff's request for statutory damages under section 605.

When determining statutory damages, some courts have simply assessed a flat damages amount per violation. See Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding $5,000 statutory damages for a one-time boxing match exhibited to 30 customers); Kingvision Pay-Per-View

-9-

Ltd. v. Brito, No. 05-CV-1042, 2006 WL 728408, at *2 (S.D.N.Y. Mar. 20, 2006) (awarding $5000 in statutory damages); Joe Hand Promotions, Inc. v. Hernandez, No. 03-CV-6132, 2004 WL 1488110 at *3 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for a one-time boxing match exhibited to about 20 customers).

As plaintiff recognizes, when presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming, other courts have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question, as an useful "starting point" for calculating damages. See, e.g., Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (awarding $50 per patron); Time Warner Cable of N.Y. City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same); J&J Sports Prods., Inc. v. LDG Williams, LLC, No. 11-CV-2145, 2011 WL 5402031, at *4 (E.D.N.Y. Nov. 7, 2011) (awarding $54.95 per patron); Mama Zee, 2002 WL 2022522, at *3 (awarding $50 per patron). A number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast. See, e.g., Circuito Cerrado, Inc., 804 F. Supp. 2d at 115 (recommending statutory damages based on $54.95 per patron); Joe Hand Promotions, Inc. v. La Nortena Rest. Inc., No. 10-CV-4965, 2011 WL 1594827, at *4 (E.D.N.Y. Mar. 28, 2011) (recommending statutory damages award

based on $50 for each patron); Garden City Boxing Club, Inc. v. Bello, No. 05-CV-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Although plaintiff has not submitted any evidence as to the residential rate for this broadcast, the typical purchase price for a pay-per-view broadcast of this nature is $54.95. See, e.g., Circuito Cerrado, Inc., 804 F. Supp. 2d at 115; Joe Hand Prods., Inc. v. Zafaranloo, 12-CV-3828, 2014 WL 1330842, at *3 n.5 (E.D.N.Y. Apr. 1, 2014); LDG Williams, LLC, 2011 WL 5402031, at *4.

Plaintiff has submitted evidence that 25 customers were present at Blue Iguana Lounge when investigator Covington observed the program being illegally displayed. Covington Aff. at 2. Plaintiff alleges it is entitled to receive defendant's profits in the amount of 25 patrons multiplied by the residential rate $54.95, or $1,373.75. However, the courts use this residential fee formula to determine plaintiff's statutory damages, but not defendants' profits. In addition, plaintiff is not entitled to receive defendants' profits as damages since it is not a loss borne by plaintiff. See Joe Hand Promotions, Inc. v. Algesk, Inc., No. 12-CV-05356, 2014 WL 1028947, at *5

(E.D.N.Y. Mar. 14, 2014).

Besides the $1,373.75 residential fee, plaintiff also seeks damages for the $2,200 licensing fee that the defendants would have has to pay to acquire the rights to display the program. Pl.'s Mem. at 10. However, courts typically award damages based only on a per-patron basis or commercial licensing fee, not both. See J & J Sports Prods., Inc. v. Meson De Columbia, Inc., No. 10-CV-1142, 2010 WL 4791771, at *3 (E.D.N.Y. Oct. 7, 2010)(awarding the higher licensing fee over a per-patron calculation); cf. Garden City Boxing Club, Inc. v. Morales, No. 05-CV-0064, 2005 WL 2476264, at *7 (E.D.N.Y. Oct. 7, 2005) (awarding a higher per-patron amount rather than the commercial licensing fee because of increased damages from stealing broadcasts). Since awarding statutory damage based on a per-patron basis would result in damages that would be lower than plaintiff's actual lost revenues of the $2,200 licensing fee, I respectfully recommend that damages be awarded based on the lost licensing fee, or $2,200.

### 2. Enhanced Damages

Further, I recommend that the Court grant plaintiff's request for enhanced damages against defendants. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp., No. 88-CV-2834, 1991

WL 58350 (E.D.N.Y. Mar. 20, 1991)); Zafaranloo, 2014 WL 1330842, at *3. Since knowledge of infringement may be "actual" or "constructive," it needs not be proven directly and can be inferred from the defendant's conduct. See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). A defendant's default may also be considered as evidence of willful infringement. See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003); Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03-CV-2132, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006); Peer Int'l Corp. v. Max Music & Entm't, No. 03-CV-0996, 2004 WL 1542253, at *3 (S.D.N.Y. Jul. 9, 2004).

Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. Recio, No. 02-CV-6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted). Loss of goodwill is also a factor for courts to consider when awarding enhanced damages. Aquarius Fuente De Soda, Inc., 2009 WL 3173968, at *8 (damages to goodwill and reputation was a factor considered in awarding enhanced damages).

The undisputed facts presented by the plaintiff in its

complaint and the supporting affidavits clearly establish that Blue Iguana Lounge is a commercial establishment that publicly displayed the Pacquiao/Mosley match to customers without authorization. Plaintiff's submissions and defendants' default suffice to support the inference that defendants displayed the boxing match for commercial gain in order to attract customers to patronize their establishment. Thus, I recommend that enhanced damages in the amount of $6,600, three times the statutory damages recommended, be awarded against the defendants.

    C.   <u>Pre-Judgment Interest</u>

Plaintiff seeks pre-judgment interest from the May 7, 2011 unauthorized screening. Pl.'s Mem. at 18.

Although there is no statute authorizing an award of pre-judgment interest for violations of sections 553 and 605 of Title 47, the district court nonetheless has the discretion to impose a pre-judgment interest award. <u>See</u> <u>Williams v. Trader Publ'g Co.</u>, 218 F.3d 481, 488 (5th Cir. 2000); <u>J&J Sports Prod., Inc. v. Sin Fronteras Rest.</u>, No. 09-CV-1873, 2010 WL 1565441, at *9 (E.D.N.Y. Feb. 23, 2010). The Second Circuit has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization "where the awards were fair, equitable and necessary to compensate the wronged party fully." <u>Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO</u>, 955 F.2d 831, 835 (2nd Cir. 1992). Such discretionary award is normally reserves for "exceptional" cases. Since the award of statutory damages and enhanced damages

recommended here are not only sufficient to make plaintiff whole, but are in part punitive, I recommend that pre-judgment interest not be awarded. See Wickham Contracting Co., Inc., 955 F.2d at 834 (pre-judgment interest should not be awarded "if the statutory obligation on which interest is sought, is punitive in nature"); see also Sin Fronteras Rest., 2010 WL 1565441, at *9.

D. Attorneys' Fees and Costs

Title 47 U.S.C. § 605(e)(3)(b)(iii) mandates that "reasonable costs and attorney's fees be awarded to a prevailing aggrieved party." Sykes, 997 F.2d 998 at 1009. Plaintiff here does not request attorneys' fees but seeks costs of $400 for the Clerk's fee and $120 for process server fees. See ct. doc. 9 ("Pl.'s Mot.") at 5. Although no other evidence other than plaintiff's statement of damages was submitted to substantiate the costs for service of process, affidavits of service were filed reflecting service on both the individual and corporate defendants by licensed process server, and the reimbursement requested is well within the norm. See J & J Sports Prod., Inc. v. La Ruleta, Inc., No. 11-CV-4422, 2012 WL 3764062, at *5 (E.D.N.Y. Aug. 7, 2012). I therefore recommend that the plaintiff be awarded $520 in total costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff judgment against defendants Arvind P. Mangal and AAA Blue Iguana Bar Lounge, Inc. d/b/a Blue Iguana

Lounge in the amount of $2,200 in statutory damages, $6,600 in enhanced damages and $520 in costs, for a total judgment of $9,320.

This report and recommendation will be filed electronically and a copy sent by mail to the defendants on this date. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Sterling Johnson and plaintiff, on or before September 29, 2014. Failure to file timely objections may waive the right to appeal the District Court's Order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**SO ORDERED.**

Dated: Brooklyn, New York
September 10, 2014

_____/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE